USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/21/14

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
MICHAEL DAWSON,                                                :
                                          Plaintiff(s),        :
                                                               :    1:13-cv-06593 (GHW)
                 -against-                                     :
                                                               :    MEMORANDUM OPINION
NEW YORK CITY TRANSIT AUTHORITY,                               :        AND ORDER
                                                               :
                                          Defendant(s).        :
                                                               :
-------------------------------------------------------------- X
```

GREGORY H. WOODS, District Judge:

Plaintiff Michael Dawson is an epileptic. Until 2004, he was a train operator in the New York subway system. After suffering from two seizures in 2004, he was permanently reassigned to a new position with the New York City Transit Authority ("NYCTA") in 2005. While he suffered from another seizure in 2007, Dawson asserts that his epilepsy is now controlled by medication. Dawson now sues the New York City Transit Authority for failure to respond to the requests that he has made for "reinstatement" to his prior position as a train operator. Dawson alleges that NYCTA's failure to act in response to his requests for reinstatement violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* This case raises the question of whether or not NYCTA's failure to respond to Dawson's requests for reinstatement to a job he last held in 2005 gives rise to a cause of action under the ADA. Because the Court finds that Dawson's request for reinstatement is, in effect, a collateral attack on an employment action that is otherwise time barred, and because Dawson has not plausibly pleaded a failure to hire claim, the Court dismisses Dawson's case.

I.     BACKGROUND

   A.     Facts

NYCTA is a public authority of the State of New York. It operates public transportation in New York City, including the New York City subway system. Complaint ¶ 5, Dkt. 1 ("Compl."). Dawson was hired as a train conductor by NYCTA in March of 1998. *Id.* ¶ 6. Dawson was promoted to the position of train operator in 1999. *Id.* For the next five years, he operated subway trains throughout New York City. *Id.*

On April 10, 2004, Dawson suffered from a seizure in his sleep. *Id.* ¶ 8. Dawson immediately reported the event to NYCTA. As a result, NYCTA took Dawson "out of service completely." *Id.* ¶ 9. At that time, NYCTA also took Dawson off of the list for eligibility for a supervisory position. *Id.* Dawson was treated by a physician, who did not prescribe him medication. *Id.* ¶ 11. That physician cleared Dawson to return to work, but prohibited him from operating trains. *Id.* ¶ 12.

Unfortunately, just a few months later Dawson suffered another seizure. *Id.* ¶ 14. Dawson again immediately notified NYCTA of his seizure. *Id.* As a result, his work classification was changed from "temporarily restricted—no work available" to "permanently restricted pending reclassification." *Id.* Since he could not work as a train operator, for the next nine months, Dawson was forced to use all of his accrued time off, and to apply for temporary disability and unemployment benefits. *Id.* ¶ 15.

In the beginning of 2005, Dawson attended classes to become a station agent. *Id.* ¶ 18. He was then offered the position of station agent, "and was told that if he didn't take the position he would not have a job at all." *Id.* Dawson took the position. At the time that Dawson took the position as a station agent, the position had a lower hourly salary than the position of train operator;

the same is true today. *Id.* Dawson has worked as a station agent since 2005; he is currently employed in that position.

While Dawson's medication has generally controlled his epilepsy, around September 14, 2007, Dawson suffered his third seizure. *Id.* ¶ 20. In the rush to prepare his children for school, Dawson forgot to take his prescribed anti-seizure medication, and suffered the seizure later that day. *Id.* Dawson has consistently taken his medication since that third seizure, and has been seizure-free since September of 2007. *Id.*

In September of 2009, Dawson received clearance from his new neurologist, Dr. Padmaja Kandula, to return to the position of train operator. *Id.* ¶ 23. In the Fall of 2009, Dawson "requested to be reinstated to his old position" and forwarded a letter from Dr. Kandula to the NYCTA. *Id.* ¶ 24. The letter stated that Dawson was under the care of Dr. Kandula, and that, in his medical opinion, there was "no neurological contraindication for Dawson to return to work as a NYCT Train Operator." *Id.* Exh. 1).

Dawson also contacted his union representative, Chris Litebourne, and Steven Larrymore, a liaison with the NYCTA's medical department. *Id.* ¶ 24. "Unfortunately, they were not able to gain any traction, and his request was ignored by NYCTA." *Id.* Approximately six months later, Dawson sent another letter from Dr. Kandula to the NYCTA. *Id.* ¶ 25. That letter, dated March 17, 2010, stated that Dawson was taking "the anticonvulsant medications Keppra and Carbatrol . . ." and that "Mr. Dawson is cleared neurologically to return to work as a NYCT Train Operator and I have received a copy of the NYCT medical standards for Train Operators code: 650." *Id.* Exh. 2.

In June 2010, Dawson contacted an employee with the NYCTA's medical department about his "request for reinstatement" and was told that "NYCTA was aware of his request and that it was still pending." *Id.* ¶ 26. By October 2010, having heard nothing from NYCTA, Dawson submitted letters to two executives of the NYCTA. *Id.* ¶ 27. Each of the two letters is entitled "Title

Restoration." In his October 8, 2010 letter to Chief Transportation Officer John Johnson, Dawson wrote:

> I am contacting you for your assistance in obtaining a G-46 medical form to see a T/A doctor at the MAC to get evaluated to get restored to a full service T/O. . . . . I spoke with Ms. Lewis requesting a G-46. Her replay was T/A is aware of my case & it's still pending. On or about August 2010, I met with & spoke to union rep, Jose Lagoa. He said as far as T/A was concerned, the case was closed. I've hit brick wall after brick wall trying to find out TA's medical restoration policy to see if I can return to my former title of TO.

*Id.* Exh. 3. Dawson sent three other undated letters to executives of NYCTA, asking that they advise him regarding his options "to get to the medical department to get a G-46 for title restoration." *Id.* Dawson received no response to those letters. *Id.* ¶ 27.

Weill Cornell Medical College sent NYCTA three subsequent letters regarding Dawson. The first, dated September 17, 2010, was from Dr. Kandula. The letter states that Dawson is "well controlled on medication and has not had a seizure since September 16, 2007." *Id.* Exh. 4. The next letter from Dr. Kandula, dated April 11, 2011, stated that Dawson "is well controlled and seizure free on the anti-epileptic medications . . . and will need to remain on medications indefinitely. . . . . In my medical opinion there is no neurological contraindication for Mr. Dawson to return to work as a NYCT Train Operator." *Id.* The third letter, dated May 30, 2012, was sent by Ms. Jovine, a clinical social worker at Weill Cornell. In it, Ms. Jovine stated that Dawson was seizure free and would need to remain on medications indefinitely. Ms. Jovine also stated that Dr. Kandula "has indicated that in her medical opinion there is no neurological contraindication for Mr. Dawson to return to work as a NYTC Train Operator." *Id.*

In 2011, an unidentified "agent" of Dawson spoke with Dr. Lim, the medical director of NYCTA. *Id.* ¶ 29. According to the complaint, the medical director told the agent "what documentation needed to be submitted" and told the agent to submit that documentation to her. *Id.*

Dawson's agent submitted that documentation. The complaint does not identify what the "needed" documentation was or what it was needed for.

Dawson continued "requesting reinstatement/evaluation" with Steven Larrymore, the NYCTA medical liaison. *Id.* ¶ 30. Mr. Larrymore told Dawson that the NYCTA would not be responding to him regarding his case, and referred Dawson to Ms. Lee Ann Banks, NYCTA's director of human resources. *Id.* Dawson spoke with Ms. Banks on June 26, 2012. She told him that she was aware of his case, "that there was a backup in cases," and that he should call back in two to three weeks, when an answer would be "readily available." *Id.* Dawson left a telephone message for Ms. Banks on July 20, 2012, requesting information regarding the status of his case, but received no response. *Id.* Dawson called again on July 23, 2012, but someone hung up on him. *Id.* Dawson called back and left a message of unspecified content with another unnamed NYCTA employee. *Id.*

### B. Procedural History

Dawson filed a complaint with the New York State Division of Human Rights (the "Division") on August 24, 2012. *Id.* ¶ 32; Affidavit of Robert K. Drinan, Exhibit B. NYCTA responded to Dawson's charge of discrimination in a letter addressed to the Division dated March 11, 2013. Compl. ¶ 33; Affidavit of Robert K. Drinan, Exhibit C. The letter asserts, among other things, that it is unsafe for Dawson to operate a train because he experienced three seizures and states that safety is the agency's top priority. Compl. ¶ 35. The letter requested that Dawson's complaint be dismissed. After conducting an investigation, the Division concluded that there was no probable cause to believe that the NYCTA engaged in or was continuing to engage in any unlawful discriminatory practice, and issued a letter explaining that conclusion on May 17, 2013. Affidavit of Robert K. Drinan, Exhibit D. On June 21, 2013, the U.S. Equal Employment Opportunity Commission ("EEOC") adopted the Division's findings and issued a dismissal and

5

notice of rights. Dawson filed his complaint on September 18, 2013, within the 90 day window following the issuance of EEOC's right to sue letter. On May 15, 2014, the NYCTA moved to dismiss the complaint in its entirety.

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint is not required to provide "detailed factual allegations," but it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555. The facts pleaded "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted). The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of

which judicial notice may be taken. *See Chamber v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Winfield v. Citibank, N.A.*, 842 F.Supp.2d 560, 564 (S.D.N.Y. 2012).

Recently, the Second Circuit stated that "while a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge[ ] [its] claims . . . across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Authority of New York and New Jersey*, No. 13-2705-Civ., 2014 WL 4799389, at *7 (2d Cir. Sept. 29, 2014) (internal citations and quotations omitted) (reconciling *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) with *Iqbal* and *Twombly* in the context of employment discrimination claims).  Thus, as with any other type of complaint, "[i]n the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256, 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012) (citing *Patane v. Clark*, 508 F.3d 106, 111-13 (2d Cir. 2007)).

**B.     The Applicable Limitations Period**

The ADA incorporates by reference the statutory limitations provisions set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e)(1), for employment discrimination actions. *See* 42 U.S.C. § 12117.  Generally, an administrative charge alleging violation of the ADA must be filed with the EEOC within 180 days of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e)(1).  In a "deferral" state such as New York, however, in which there is a designated state or local agency with jurisdiction to consider discriminatory employment claims, the limitations period for filing charges with the EEOC is extended to 300 days. *See id*; 29 C.F.R. § 1601.13; *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).

When a plaintiff alleges ongoing discrimination that includes acts taking place before the applicable limitations period, "the nature of the claim" determines the treatment of the prior

conduct. *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004). Under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), each "termination, failure to promote, denial of transfer, or refusal to hire" is considered a "discrete act" that triggers the running of the limitations period. *Id.* at 114; *see Petrosino*, 385 F.3d at 220; *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2d Cir. 2003). On the other hand, if the plaintiff alleges a continuing violation, such as a hostile work environment, the plaintiff need only show that part of the violation took place within the limitations period; once that is shown, a court may consider "the entire time period" of the violation in determining liability. *Petrosino*, 385 F.3d at 220 (quoting *Morgan*, 536 U.S. at 117) (internal quotation mark omitted).

Dawson's claims are predicated on the defendant's failure to consider his several requests for reevaluation and reinstatement. Under the Supreme Court's holding in *Morgan*, these are discrete acts, 536 U.S. at 114. Dawson acknowledges as much, expressly disclaiming an intent to pursue a continuing violations theory. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Opposition") at 9 ("Defendant cannot, by fiat, make Plaintiff's position a continuing-violation theory."). Since Dawson is not alleging a continuing violation, he may base his claims only on events that took place during the relevant limitations period.

In this case, Dawson filed his charge with the EEOC on August 24, 2012. Accordingly, he is barred from asserting any claims of discriminatory conduct alleged to have occurred prior to October 29, 2011, 300 days before the filing of the EEOC charge.

### C. Analysis

The ADA prohibits discrimination against any "qualified individual on the basis of disability," including with respect to decisions to hire. 42 U.S.C. § 12112(a). A *prima facie* case of discrimination under the ADA requires showing that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA; (3) the plaintiff is otherwise qualified to

perform the essential functions of his job with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *See Rios v. Dep't of Educ.*, 351 F. App'x 503, 505 (2d Cir. 2009) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)) (emphasis added). While Mr. Dawson is not required to establish a *prima facie* case of employment discrimination at the pleading stage, the elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

Here, the first prong of the *prima facie* case is not in dispute. NYCTA is subject to the ADA. The Court assumes for purposes of this motion that Mr. Dawson is "disabled" within the meaning of the ADA. The parties dispute whether the third prong is met, but the Court does not reach that issue because the Court finds that Mr. Dawson has not satisfied the fourth prong.

The Second Circuit has "defined adverse employment action broadly to include 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). Mr. Dawson's complaint does not allege facts that meet even this broad standard. Mr. Dawson's current position is unaffected by his failed quest to seek reinstatement to the job he last occupied in 2005. He does not allege that his current job requires further accommodation for his disability. Therefore, the adverse act at the center of Mr. Dawson's case is the NYCTA's failure to respond to his requests for reinstatement since October 29, 2011. For the reasons described below, the Court finds that NYCTA's failure to respond to Mr. Dawson's requests for reinstatement is not actionable and that the claim cannot be construed as a plausible claim for failure to hire.

Dawson's story is a long one—beginning with the events that led to his permanent reassignment to his current position in 2005. Dawson asserts that he is not attempting to challenge

9

his 2005 permanent reassignment through this lawsuit. *See* Opposition at 4 ("Plaintiff's claims are based upon his pursuit of the Train Operator position beginning in 2009, when he was medically cleared for the position, not the title reclassification many years prior."). While only the incidents that occurred after October 29, 2011 are relevant to this analysis, it is helpful to review the Complaint's allegations regarding Dawson's actions from 2009 on.

Those allegations make it clear that Dawson was seeking reinstatement to his prior position. In the Fall of 2009, Dawson "requested to be reinstated to his old position . . . ." Compl. ¶ 24. In June 2010, he contacted NYCTA again "concerning his request for reinstatement . . . ." *Id.* ¶ 27. After that, Dawson continued "requesting reinstatement/evaluation" with employees of NYCTA. *Id.* ¶ 30. From 2010 to 2012, Dawson's health care providers sent letters directly to NYCTA regarding Dawson's condition. Two of those letters concluded that there was no medical contraindication for Dawson to "return to work as a NYC Train Operator." *Id.* Exh. 4. Clearly, the alleged discriminatory acts in this case consist of NYCTA's failure to respond favorably to Dawson's repeated requests for "reinstatement."[1]

Courts distinguish "between a new application for employment and a demand for 'reinstatement' which 'seeks to redress the original termination.'" *Johnson v. The New York Hospital, et al.*, No. 97 Civ. 7089, 1998 WL 851609 at * 3 (S.D.N.Y. Dec. 9, 1998) (citation omitted). The Third Circuit highlighted this distinction in *NLRB v. Textile Machine Works*, 214 F.2d 929 (3d Cir. 1954), stating:

---

[1] Dawson tacitly acknowledges the fact that his interactions with NYCTA following October 29, 2011 provide only a weak foundation for his discrimination claim. In his opposition papers, he asserts that "perhaps the first act of discrimination occurred in March 2013, when Dawson received Defendant's Position Statement denying that Mr. Dawson could be a Train Operator even though his condition was now fully controlled." Opposition at 9-10. The Court does not evaluate this purported discriminatory act. The position description was issued following—and in response to—Dawson's EEOC complaint. Even if a lawyer's response to an EEOC investigation on behalf of her client could be considered to be a discriminatory adverse employment act (and Dawson presents no authority for this proposition), Dawson has not exhausted his administrative remedies with respect to that act.

> A discharged employee who seeks to be reinstated is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer. The word reinstatement must be employed in this connection as the equivalent of uninterrupted employment. . . . The concept of a discriminatory refusal to hire is a different concept.

*Id.* at 932.  In other words, "[a] denial of a request for reinstatement cannot be deemed a 'new and separate discriminatory act,' nor can it render the initial violation a continuing one." *Searles v. West Hartford Board of Education, et al.*, No. 3:00 Civ. 1115, 2000 WL 1751302 at *2 (D. Conn. Nov. 27, 2000); *see also Poulsen v. Publix Super Markets, Inc.*, No. 1:07v96, 2009 WL 3080929, at *1 (N.D. Fla. Sept. 23, 2009); *Winfree v. City of Chicago*, 957 F. Supp. 2014 (N.D. Ill. 1997); *Kao v. Sara Lee Corp.*, No. 92 Civ. 7311, 1995 WL 453025 (N.D. Ill. Jul. 28, 1995).

In this case, Dawson, represented by counsel, has consistently framed his case as a series of requests for reinstatement.  In challenging NYCTA's failure to reinstate him, however, Dawson is effectively challenging the decision made by NYCTA to permanently remove him from the position of train operator in 2005.  Dawson's requests for "reinstatement" in this case represent a collateral attack on an employment action that occurred long outside of the limitations period.  His requests for reinstatement do not give rise to new and separate discriminatory acts cognizable under the ADA.  This general rule is sensible.  The limitations period would be meaningless if a litigant could make an otherwise time-barred employment action timely simply by making a phone call or sending a letter requesting "reinstatement" to their prior position, resetting the clock to the date of their new request.[2]

---

[2] Mr. Dawson was permanently reassigned to a new position in 2005; he has not pleaded that he has any continuing entitlement to reinstatement or reevaluation.  In that way, this case is distinguishable from cases such as *Warmley v. New York City Transit Authority*, 308 F.Supp. 2d 114 (E.D.N.Y. 2004), in which the court held that NYCTA's failure to reinstate a plaintiff was actionable.  In *Warmley*, the plaintiff brought his request for reinstatement during a one year window following his termination, during which employees had a statutory right to apply for reinstatement.

11

While Dawson's requests are not actionable if they are treated as requests for reconsideration of the permanent job action in 2005, they could form the basis of a failure to hire, promote, or recall claim.  Therefore, although Dawson has not framed his claim as such in his Complaint, the Court will evaluate whether the Complaint plausibly alleges a claim for a failure to hire in violation of the ADA.  In order to establish a *prima facie* case based on an alleged failure to hire, or to promote, or to recall, a plaintiff must show that he:  (1) is a member of a protected class; (2) applied and was qualified for a job for which the employer was seeking applicants; (3) was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.  *Aulicino v. N.Y. City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Petrosino*, 385 F.3d at 226).  Dawson's Complaint fails to meet these requirements.

Most critically, the Court does not believe that Dawson has plausibly pleaded that he applied for a job at NYCTA.  Recall that events prior to October 29, 2011 are time barred.  After that date, Mr. Dawson called a medical liaison at NYCTA "requesting reinstatement."  His doctor's office sent short letters to NYCTA describing his health, unaccompanied by any other materials.  At some point in 2011—it is not clear if this was prior to or after October 29, 2011—Mr. Dawson's "agent" sent documentation to NYCTA's medical director.  In June 2012, for the first time, Dawson contacted someone from NYCTA's human resources department; she informed him that there was a "backup in cases" and asked him to call back in two to three weeks.  Dawson did so, but was unable to speak with another human resources representative.  He made no further contact.  A month later, he filed his discrimination complaint.  In the Court's view, these actions cannot plausibly be viewed as applications for a job as a train operator at NYCTA—a highly regulated civil service position.

Dawson's Complaint also does not plead facts that satisfy the other *prima facie* elements of a failure to hire claim—existence of a position, rejection by NYCTA, continuation of the open

12

position—but the Court does not address them specifically; Dawson's failure to allege plausibly that he ever applied for the job is fatal. "Put most simply, in the absence of a job application, there cannot be a failure-to-hire." *Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 807 (1st Cir. 2006) (holding that the submission of "two general letters . . . expressing an interest in any available job" cannot be the predicate for a failure to hire case). While it is true that a "complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, it must at a minimum assert in a nonconclusory factual matter sufficient to nudge[ ] [its] claims . . . across the line from conceivable to plausible to proceed." *E.E.O.C.*, 2014 WL 4799389, at *7 (internal quotations and citations omitted). Taking the alleged facts as true, the Complaint does not permit the reasonable inference that the NYCTA failed to hire Dawson as a train operator in violation of the ADA. Indeed, it is not surprising that the Complaint fails to do so. That argument seems an afterthought; Dawson consistently asserts that he was requesting reinstatement to the position from which he was permanently transferred in 2005, a reevaluation of an employment decision taken long before.

Even if Mr. Dawson could establish that NYCTA's failure to respond to his requests for reinstatement was an adverse employment action, Mr. Dawson has not pleaded sufficient facts to give rise to an inference that the action occurred because of his disability. As with claims brought under other employment discrimination statutes like Title VII or the ADEA, the "sine qua non" of an ADA discrimination claim "is that the discrimination must be 'because of' the employee's protected status." *Williams*, 2012 WL 4471544, at *2 (citing *Patane*, 508 F.3d at 112); *see also id.* at *3 (dismissing plaintiff's Title VII failure-to-hire claim because plaintiff "recites no factual circumstances from which this Court can infer a discriminatory motivation"); *Munoz-Nagel,* 2013 WL 1809772, at *6 (dismissing plaintiff's ADA failure to hire claim because plaintiff "has failed to include any factual allegations from which it can be inferred that Guess did not hire her because of

13

her alleged disability"); *Jiggetts v. Local 32BJ, SEIU*, No. 10 Civ. 9082, 2011 WL 4056312, at *2 (S.D.N.Y. Aug. 10, 2011) (Report & Recommendation), adopted by No. 10 Civ. 9082, 2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011) (recommending that motion to dismiss ADA claims be granted because plaintiff failed "to allege a connection between his claimed disabilities and any adverse employment action taken against him").

Dawson's Complaint does not plead a plausible nexus between his disability and NYCTA's failure to respond to his requests for reinstatement. Dawson presumes that NYCTA's failure to respond is attributable to insidious motives, but he provides no basis for that conclusion. Nothing in the Complaint itself supports an inference that Dawson's disability motivated NYTCA's failure to respond timely to his requests for reinstatement. For instance, Mr. Dawson does not allege that NYCTA afforded non-disabled persons better treatment, or that any NYCTA employees made comments or took actions that could give rise to an inference of discriminatory animus. *See, e.g.*, *Winston v. City of New York*, No. 12 Civ. 0395, 2014 WL 2957488, at *1 (E.D.N.Y. July 1, 2014) (holding that plaintiff must "set forth factual circumstances—such as preferential treatment given to dissimilarly situated individuals, or remarks that convey discriminatory animus—from which the Court can infer discrimination on the basis of protected status.") (internal quotation marks omitted).[3] Dawson must show by more than mere speculation that NYCTA's failure to act was the result of discrimination. He has failed to do so. Dawson's Complaint shows that NYCTA is slow to respond, but Dawson does not plausibly plead that his disability was the cause of the bureaucracy's inaction.

Dawson simply fails to plead facts sufficient to "nudge [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Because Dawson's Complaint fails to state a

---

[3] In fact, the only specific factual allegation contained in Dawson's Complaint bearing on the reason for NYCTA's delay in responding before Dawson filed his claim with the EEOC suggests a non-discriminatory explanation, i.e., that there was simply a "backup in cases." Compl. ¶ 31.

14

claim, the motion to dismiss his claims under the ADA is granted. Since the Court has concluded that Dawson fails to allege an actionable adverse employment action caused by discrimination, the Court does not need to address the question of whether a person with epilepsy is qualified to be a train operator in the New York subway system.

      D.    **Supplemental Jurisdiction**

Having dismissed the sole claims giving rise to a basis for federal jurisdiction in this case, the Court has discretion under 28 U.S.C. § 1367(c) to either retain or decline to retain jurisdiction over Dawson's remaining state law claims. *See Osborn v. Haley*, 549 U.S. 225, 245 (2007). A "federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7. Weighing these factors, the Court declines to exercise supplemental jurisdiction over Dawson's remaining state law claims.

**III.**    **CONCLUSION**

For the foregoing reasons, NYCTA's motion to dismiss is granted. The Clerk of Court is directed to terminate the motion at docket number 17, and to close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: October 21, 2014  
New York, New York

                                                          GREGORY H. WOODS  
                                                          United States District Judge